## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

IN RE:

                                                          BK 10-72943

**JOHN THOMAS SUTTON**

        **Debtor.**

                                                          AP 11-70007

**ROBERT R. HEMBREE,**

        **Plaintiff,**

vs.

**JOHN THOMAS SUTTON,**

        **Defendant.**

## MEMORANDUM OPINION

       This adversary proceeding came before this court on August 8, 2012 for trial on Robert R. Hembree's ("Plaintiff") Complaint Objecting to Discharge.  J. Paul Whitehurst appeared on behalf of Plaintiff; John E. McCulley appeared on behalf of John Thomas Sutton ("Debtor").   After reviewing the evidence admitted at trial and the arguments of the parties, this court **SUSTAINS** Plaintiff's objection to discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and **DENIES** Debtor his discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

## JURISDICTION

       The district court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(a) & (b).  Jurisdiction is referred to the bankruptcy courts by the General Order of Reference

1

of the United States District Court for the Northern District of Alabama, signed July 16, 1984, as Amended July 17, 1984 pursuant to 28 U.S.C. § 157(a). The bankruptcy court may enter an appropriate order and judgment pursuant to 28 U.S.C. § 157(b)(2)(J).

## FINDINGS OF FACT

Debtor is a solo practitioner in Tuscaloosa, Alabama, who owns his own law practice, The Law Office of John T. Sutton, LLC. (Defendant's Exhibit 3). His law practice primarily handles personal injury cases on a contingent fee basis, criminal defense work, and divorce cases, but Debtor also occasionally handles bankruptcy work. (Plaintiff's Exhibit 6). Although Debtor is a solo practitioner, he shares office space with another local attorney so they can share rental expenses, secretarial expenses, and utilities.

Plaintiff, an attorney who practices in Guntersville, Alabama lent money to Debtor and another Tuscaloosa attorney to finance some contingent fee cases. The other Tuscaloosa attorney filed bankruptcy, leaving Debtor solely responsible for the debt owed to Plaintiff. Plaintiff began seeking collection from Debtor, and when those efforts were unsuccessful, Plaintiff filed suit against Debtor in 2007.

On June 16, 2010, while the lawsuit filed by Plaintiff was pending, Debtor sold his residence located at 5322 Madera Drive, Tuscaloosa, Alabama. (Plaintiff's Exhibit 7). After paying off the first and second mortgages on the property, Debtor realized about $89,000.00 in proceeds from the sale of the home. The proceeds were deposited into Debtor's checking account at Robertson Bank. Once the proceeds were deposited into his checking account at Robertson Bank, Debtor disposed of the proceeds in the following manner: $20,000.00 was transferred to Debtor's LLC; $15,000.00 was

2

transferred to Tanner Moore; $35,000.00 was transferred to a money market account opened at Robertson Bank; $5,000.00 was transferred to Jamie Tisch as a refund for an unearned retainer; $1,500.00 was transferred to Tanner Moore; $3,000.00 was transferred to Tanner Moore; and $500.00 was transferred to Tanner Moore. (Debtor's Exhibit 9). The $35,000.00 transferred to a money market account at Robertson Bank was disposed of in the following manner: $500.00 was deposited into his mother's account to help with utilities; $1,000.00 was transferred to Debtor's LLC; $1,200.00 was transferred to Debtor's LLC; $10,000.00 was transferred to Debtor's LLC; $9,000.00 was transferred to Debtor's LLC; $2,500.00 was transferred to Debtor's LLC; $1,400.00 was transferred to Debtor's LLC; $1,790.00 was transferred to Debtor's LLC; $1,000.00 was transferred to Debtor's LLC; and $750.00 was transferred to Debtor's LLC. (Debtor's Exhibits 5, 6, & 12). Debtor also used the sale proceeds to pay taxes: Immediately after $10,000.00 was transferred to Debtor's LLC from the Debtor's money market account, Debtor paid $158.00 to Alabama Department of Revenue, $382.00 to the Alabama Department of Revenue, and $5,339.00 to the Department of the Treasury. (Debtor's Exhibit 5).

On October 18, 2010, a jury verdict was rendered against Debtor, and in favor of Plaintiff, in the amount of $95,054.65. (Plaintiff's Exhibit 8).

Although it is not clear when Debtor first met with bankruptcy counsel, it must have been soon after the jury verdict was rendered against Debtor because Debtor completed his credit counseling on November 4, 2010. (Bk. Doc. 8). Debtor initially met with a paralegal from the firm of Dionne & Dionne. This paralegal conducted the initial interview and filled out a rough draft of Debtor's schedules. Mr. Dionne eventually met with Debtor and went over the schedules as filled out by the paralegal. A copy of the final draft of the schedules was emailed to Debtor for Debtor to

3

review.  Debtor okayed the schedules, and Debtor's voluntary bankruptcy petition pursuant to Chapter 7 of the United States Bankruptcy Code was filed on December 4, 2010. (Bk. Doc. 1).  The bankruptcy petition was bare bones - no schedules were filed.  On December 16, 2010, Debtor's schedules were filed, and on December 20, 2010, Debtor's Statement of Financial Affairs ("SOFA") was filed.  (Bk. Docs. 14 & 17).   The schedules and SOFA were incomplete and inaccurate in several respects: Debtor did not disclose the sale of his residence, despite the fact that Debtor filed bankruptcy a mere 6 months after the sale occurred; Debtor did not disclose the checking account at Robertson Bank into which the proceeds from the sale of his residence were deposited;[1] Debtor did not disclose the money market account that was held at Robertson Bank into which proceeds from the sale of the house were deposited; and Debtor did not disclose any of the transfers that disposed of the proceeds from the sale of his residence.

Debtor's schedules show Plaintiff is Debtor's only major creditor: No secured creditors were listed on Schedule D; no priority creditors were listed on Schedule E; Schedule F lists $425.00 owed to GC Services, a potential claim owed to Mary Elaine Jackson valued at $1.00, and $94,500.00 owed to Plaintiff.[2]

The § 341 meeting of creditors was scheduled for January 6, 2011, but was continued to and

---

[1]On original Schedule B, Debtor did disclose that he had a checking account with a value of $200.00, but did not disclose the fact that the checking account was held at Robertson Bank. (Bk. Doc. 14).

[2]Schedule F also lists a $95,000.00 debt owed to Rob Embry c/o Paul Whitehurst.  Paul Whitehurst represents Plaintiff in this adversary proceeding.  It appears that Debtor listed the debt twice so that Plaintiff's attorney would also receive notice.  It is not clear why the names are spelled differently, why a different debt amount is listed, and why a different date incurred is listed for the debts owed to Rob Hembree, Plaintiff, and Rob Embry c/o Paul Whitehurst.  It is clear, however, from the testimony at trial that Debtor only owes one $95,000.00 debt.  The debt owed to Plaintiff and Rob Embry are one and the same.

held on January 20, 2011. Prior to the commencement of the § 341 meeting of creditors, the Chapter 7 Trustee informed Debtor's bankruptcy counsel that he received information indicating that Debtor sold his residence prior to the filing of the bankruptcy petition and that Debtor placed the proceeds from the sale in an account held by Debtor's mother. Debtor's bankruptcy counsel informed Debtor of this prior to the commencement of the § 341 meeting of creditors. Debtor was examined by the Chapter 7 Trustee,[3] as well as the attorney for Plaintiff. A recording of the § 341 meeting of creditors was admitted into evidence at trial as Plaintiff's Exhibit 1. Debtor filed amended schedules and an Amended SOFA on January 28, 2011. (Bk. Doc. 21). The following chart shows the information disclosed in Debtor's original schedules, Debtor's testimony at the § 341 meeting of creditors, and Debtor's amended schedules:

|  | Original Schedules | § 341 Testimony | Amended Schedules |
|---|---|---|---|
| Voluntary Petition | Debtor listed his address as 2811 6th Street, Tuscaloosa, Alabama, which is Debtor's office address. | Debtor testified that he currently lives at 1845 Gaineswood Drive, Tuscaloosa, Alabama. | Debtor did not amend his voluntary petition to show his correct address. |
| Schedule B, Item 2 requires debtors to disclose all checking, savings, or other financial accounts by | Debtor listed one checking account with a value of $200.00. No bank name was listed. | Debtor testified that he has a personal checking account at Robertson Bank and a small savings | Debtor listed a checking account at Robertson Bank with a value of $200.00. Debtor listed a |

---

[3]When Debtor was questioned about the sale of his residence, he could not remember the names of the people who bought the residence. Trustee asked if Debtor had sold the residence to Phillip and Tyra Hilliard. Debtor responded that he had sold the residence to Phillip and Tyra Hilliard. Because Trustee was aware of the identity of the purchasers at the § 341 meeting of creditors, Trustee obviously had information about the sale of the residence prior to the commencement of the § 341 meeting of creditors.

5

| | | | |
|---|---|---|---|
| disclosing the description, location, and valuation of the property. | | account at Tuscaloosa Credit Union and BF Goodrich Credit Union, which is now Alabama One Credit Union. | savings account at Alabama One Credit Union with a value of $1,464.29. Debtor listed a savings account at Tuscaloosa Credit Union with a value of $46.73. |
| Schedule B, Item 13 requires debtors to list any stock along with any interest in an incorporated or unincorporated business. | Debtor stated that he is the "sole shareholder in Sutton-McCulley" with a value of $500.00. | Debtor testified that he is the sole shareholder of the Law Office of John T. Sutton. | Debtor stated that he is the sole member of The Law Office of John T. Sutton, LLC with a value of $500.00. |
| Schedule B, Item 16 requires debtors to list any accounts receivable. | Debtor listed no accounts receivable. | Debtor testified about a few accounts receivable of limited value. These accounts receivable would be collected by The Law Office of John T. Sutton, LLC, not the Debtor individually. | Debtor listed no accounts receivable. |
| Schedule B, Item 26 requires debtors to list any boats, motors, and accessories. | Debtor listed no boats, motors, or accessories. | No questions were asked regarding boats, motors, or accessories. | Debtor listed a potential interest in a boat purchased with another individual in 1996. Debtor further stated that he did not know where the boat is located or how much the boat is worth. |
| Schedule G requires debtors to describe all executory contracts of any | Debtor listed no executory contracts or unexpired leases. | Debtor testified that he is a signatory on an unexpired lease for the office space | Debtor listed an unexpired lease with Baird Properties for the office space that |

| | | | |
|---|---|---|---|
| nature and all unexpired leases of real or personal property. | | that he shares with another attorney. | he shares with another attorney. Debtor intends to assume the lease. |
| SOFA, Question 1 requires debtors to provide their gross income for the two calendar years preceding the filing of the petition, as well as the year-to-date income for the calendar year of the filing of the petition. | Debtor listed his adjusted gross income for 2008 and 2009, but provided no income for 2010, even though the petition was filed on December 4, 2010. | Debtor testified that he did not list year-to-date income for 2010 because he had not yet done his taxes. He estimated that his income in 2010 was between $10,000.00 and $25,000.00. | Debtor listed $5,527.00 year-to-date income for 2010. This is consistent with the Profit and Loss Statement of the LLC for 2010. (Debtor's Exhibit 10). |
| SOFA, Question 7 requires debtors to list all gifts or charitable contributions made within one year of the petition date. | Debtor marked the box labeled "None." | Debtor did not testify about gifts he made within one year of the petition date. | Debtor listed a $15,000.00 gift to Tanner Moore given on June 16, 2010. Debtor listed a $3,000.00 gift to Tanner Moore given on July 20, 2010. Debtor listed a $2,500.00 gift to Tanner Moore given on July 22, 2010. |
| SOFA, Question 10 requires debtors to disclose all property transferred within two years of the petition date unless the transfer was made in the ordinary course of the debtor's business. | Debtor marked the box labeled "None." | Debtor testified that he sold his residence in June of 2010 for about $289,000.00. | Debtor listed the transfer of an unearned retainer fee to Jamie Tisch on July 15, 2010. Debtor listed numerous transfers to The Law Office of John T. Sutton in the aggregate amount of $54,740.00, "details to be provided to the Chapter 7 Trustee." Transfers to the LLC |

Case 11-70007-CMS    Doc 48    Filed 05/09/13    Entered 05/09/13 12:46:44    Desc Main
Document    Page 7 of 26

| | | | |
|---|---|---|---|
| | | | from Debtor's individual bank account are consistent with this amount. (Debtor's Exhibit 9). Debtor did not list the transfer/sale of his residence that occurred roughly 6 months prior to the date of the petition. |
| SOFA, Question 11 requires debtors to list all closed financial accounts which were closed within one year of the petition date. | Debtor marked the box labeled "None." | Debtor testified that he closed a money market account at Robertson Bank "sometime last year." A portion of the proceeds from the sale of the home were transferred into this money market account. Debtor testified that he closed a bank account at Cadence Bank and transferred the money to a newly opened checking account with Robertson Bank, but could not recall whether the closure occurred within one year of the petition date. | Debtor disclosed that he used a $5,000.00 Robertson Bank CD to pay off a note held by Robertson Bank on October 22, 2010. Debtor disclosed that he closed a zero-balance money market account with Robertson Bank on November 1, 2010. Debtor disclosed that he closed a zero-balance checking account with Cadence Bank on June 28, 2010. |
| SOFA, Question 15 requires debtors to list all addresses debtor occupied within the three years preceding the petition | Debtor marked the box labeled "None." | Debtor testified that he lived at 5322 Madera Drive, Tuscaloosa, Alabama within the three years preceding the petition | Debtor disclosed that he lived at 5322 Madera Drive, Tuscaloosa, Alabama from September of 2001 to June of 2010. |

8

| | | | |
|---|---|---|---|
| date. | | date. In fact, Debtor lived there for ten years before he sold it in June of 2010. | |
| SOFA, Question 18 requires an individual debtor to list the name, address, tax payer identification number, nature of business, and beginning and ending date of any businesses in which the debtor was an officer, director, partner, or managing executive within six years of the date of the petition. | Debtor marked the box labeled "None." | Debtor testified that he is the sole shareholder of The Law Office of John T. Sutton, LLC. | Debtor listed the tax identification number of The Law Office of John T. Sutton, LLC, which was formed May 31, 2006. |
| SOFA, Question 19a requires debtors to list all bookkeepers and accountants who kept or supervised the keeping of books or accounts and records of the debtor within two years of the date of the petition. | Debtor marked the box labeled "None." | Debtor testified that Anita Anderson, his bookkeeper and secretary, keeps the books for the LLC and that Mr. Alan Hartley is his accountant. | Debtor listed Alan Hartley at Morrison & Smith, CPAs as the preparer of his personal tax returns and the tax returns for the LLC. Debtor listed Anita Anderson as his bookkeeper and secretary. |

At the conclusion of the § 341 meeting of creditors, Trustee requested additional documents from Debtor. Debtor's counsel testified that these documents were delivered to Trustee within one week. At trial, the nature of the documents given to Trustee was not mentioned.

On March 3, 2011, Plaintiff commenced this adversary proceeding by filing the Complaint

9

Objecting to Discharge. On March 19, 2012, Debtor filed a Motion for More Definite Statement. (AP Doc. 16). On April 23, 2012, a Consent Order was signed in which Plaintiff stipulated that the Complaint Objecting to Discharge was brought pursuant to § 727(a)(4)(A). (AP Doc. 21).

## CONCLUSIONS OF LAW

In this adversary proceeding, Plaintiff seeks a denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A). Section 727(a)(4)(A) provides, in pertinent part that:

> (a) The court shall grant the debtor a discharge, unless-
>     (4) the debtor knowingly and fraudulently, in or in connection with the case-
>         (A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A).

> [T]he very purpose of . . . 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As [previously] stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight."

Boroff v. Tully (In re Tully), 818 F. 2d 106, 110 (1st Cir. 1987) (citations omitted) (quoting Matter of Mascolo, 505 F. 2d 274, 278 (1st Cir. 1974)).

To establish a prima facie case under § 727(a)(4)(A), Plaintiff must establish by a preponderance of the evidence that: (1) Debtor made a false statement under oath; (2) the false statement related materially to the bankruptcy case; (3) Debtor knew the false statement was false; and (4) Debtor made the false statement with fraudulent intent. See Beaubouef v. Beaubouef (Matter of Beaubouef), 966 F. 2d 174, 178 (5th Cir. 1992). This court will address each element separately.

10

<u>Did Debtor make a false statement under oath?</u>

There are numerous omissions and false statements in Debtor's originally filed schedules.

These omissions from the original schedules and the original Statement of Financial Affairs

constitute false oaths within the meaning of § 727(a)(4)(A). <u>Chalik v. Moorefield (In re Chalik)</u>, 748

F. 2d 616, 618 n. 3 (11th Cir. 1984) ("A knowing and fraudulent omission from a sworn Statement

of Affairs or schedule may constitute a false oath."). They are as follows:

- Debtor did not list his residence as his street address on the petition. Instead, Debtor listed his office address. It is commonly understood that the "street address" requested on the petition refers to the debtor's residence.

- Debtor failed to disclose a savings account with Alabama One Credit Union and a savings account with Tuscaloosa Credit Union. The original Schedule B filed by Debtor listed one checking account with a value of $200.00. No bank name was listed on Schedule B. The Amended Schedule B filed by Debtor listed the checking account disclosed in the original Schedule B. In addition, Amended Schedule B also disclosed that Debtor's checking account was with Robertson Bank. Amended Schedule B also disclosed two savings accounts that were not disclosed on original Schedule B: a savings account with Alabama One Credit Union with a value of $1,464.29 and a savings account with Tuscaloosa Credit Union with a value of $46.73.

- Debtor incorrectly named his business on the original Schedule B. The original Schedule B disclosed that Debtor is the "sole shareholder in Sutton McCulley." Sutton McCulley is not the correct name of Debtor's law practice. The correct name of Debtor's law practice is The Law Office of John T. Sutton, LLC.[4]

---

[4]Plaintiff asserts that Debtor undervalued his law practice in his bankruptcy petition, and that this undervaluation constitutes a false oath. Debtor testified that he valued his interest in The Law Office of John T. Sutton at $500.00 by estimating the amount of money he would receive for the furniture in the law office. This is not an unreasonable method of valuation in this case for the following reasons. First, a review of the tax returns introduced into evidence indicates that Debtor's law practice is not an asset with any real value to third parties. Second, the fact that Debtor made numerous transfers totaling more than $50,000.00 to the law practice in the months leading up to the filing of this bankruptcy petition indicates that Debtor's law practice is not an asset with any real value to third parties. Third, while Plaintiff brought forth evidence of the accounts receivable, i.e. legal fees, owed to The Law Office of John T. Sutton, there was

- Debtor failed to disclose his potential interest in a boat on the original Schedule B. On Amended Schedule B, Debtor disclosed a potential interest in a boat purchased with another individual. In addition, Debtor indicated on Amended Schedule B that he is unaware of the boat's value and whereabouts.

- Debtor failed to disclose the lease of his office space on original Schedule G. On Amended Schedule G, Debtor listed an unexpired lease with Baird Properties for the office space that he shares with another attorney. Debtor intends to assume the lease.

- Debtor failed to disclose income from 2010 on his original Statement of Financial Affairs. The Amended Statement of Financial Affairs included 2010 year-to-date income of $5,527.00.

- Debtor failed to disclose substantial gifts made within one year of the petition on the original Statement of Financial Affairs. On the Amended Statement of Financial Affairs, Debtor disclosed a $15,000.00 gift to Tanner Moore given on June 16, 2010, a $3,000.00 gift to Tanner Moore given on July 20, 2010, and a $2,500.00 gift to Tanner Moore given on July 22, 2010.

- Debtor failed to disclose numerous transfers that occurred within two years of the petition date on the original Statement of Financial Affairs. The original Statement of Financial Affairs indicated that no such transfers had been made. However, Debtor testified that he sold his residence on June 16, 2010, just 6 months prior to the filing of this bankruptcy petition. The Amended Statement of Financial Affairs discloses other transfers that were made within two years of the filing of this bankruptcy petition: a $5,000.00 transfer to Jamie Tisch on July 15, 2010; and numerous transfers made to The Law Office of John T. Sutton, LLC, totaling $54,740.00. The Amended Statement of Financial Affairs did not disclose the sale of Debtor's residence.

- Debtor failed to disclose the closure of several bank accounts on the original Statement of Financial Affairs. The original Statement of Financial Affairs indicated that no such closures occurred. However, the Amended Statement of Financial Affairs disclosed the following: Debtor used a $5,000.00 Robertson Bank CD to pay off a note held by Robertson Bank on October 22, 2010; Debtor closed a zero-balance money market account with Robertson Bank on November 1, 2010; Debtor closed a zero-balance checking account with Cadence Bank on June 28, 2010.

- Debtor failed to disclose all addresses that he occupied within the three years preceding the

---

no evidence introduced as to the expenditures associated with the relevant cases. As entitlement to receive a fee does not necessarily equate to profit, this court finds that Debtor's valuation of $500.00 is accurate and does not constitute a false oath.

12

bankruptcy petition. The original Statement of Financial Affairs indicated that Debtor had not lived at any prior addresses. However, the Amended Statement of Financial Affairs shows that Debtor lived at 5322 Madera Drive, Tuscaloosa, Alabama from September of 2001 to June of 2010. The residence that Debtor sold in June of 2010 was located at this address.

- Debtor failed to disclose his bookkeeper and accountant on the original Statement of Financial Affairs. The Amended Statement of Financial Affairs listed Alan Hartley at Morrison & Smith, CPAs as the preparer of his personal tax returns and the tax returns for the LLC. The Amended Statement of Financial Affairs also lists Anita Anderson as Debtor's bookkeeper and secretary.

### Do the false oaths made by Debtor relate materially to the bankruptcy case?

"The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." In re Chalik, 748 F. 2d at 618. This court will now examine whether the false oaths identified above are material.

- Debtor did not list his residence as his street address on the petition. Instead, Debtor listed his office address. This is not a material false oath. Debtor does not own the house where he currently resides so listing the correct address on his petition does not relate to property of Debtor's estate.

- Debtor failed to disclose a savings account with Alabama One Credit Union worth $1,464.29 and a savings account with Tuscaloosa Credit Union worth $46.73 on Schedule B as originally filed. This is a material false oath because the savings accounts that were not disclosed are property of the estate. The fact that Debtor may exempt property, or the fact that the property has little or no value to the estate, does not mean that Debtor should not disclose such property on his bankruptcy petition. See, e.g., In re Chalik, 748 F. 2d at 618 (citations omitted) ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice them.").

- Debtor incorrectly named his business in his schedules. Schedule B lists that Debtor is the "sole shareholder in Sutton McCulley." Sutton McCulley is not the correct name of Debtor's

law practice. The correct name of Debtor's law practice is The Law Office of John T. Sutton, LLC. This is not a material false oath. Debtor disclosed that he owned a law practice, and the misstatement of the name of the law practice is not material in this case.

- Debtor failed to disclose his potential interest in a boat on Schedule B as originally filed. While Debtor is unaware of the boat's current value, Debtor still should have disclosed his interest in such boat. His failure to do so is a material false oath because Debtor's interest in the boat is property of the estate. <u>See</u>, <u>e.g.</u>, <u>In re Chalik</u>, 748 F. 2d at 618 (citations omitted) ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice them.").

- Debtor failed to disclose the lease of his office space on Schedule G as originally filed. Debtor intends to assume the lease. This is a material false oath because it concerns the business transactions and business dealings of Debtor.

- Debtor failed to disclose his year-to-date income from 2010 on his original Statement of Financial Affairs. This is not a material false oath. Debtor disclosed that he was receiving income on Schedule I, so Debtor's failure to list his year-to-date income would not cause the trustee to mistakenly believe that Debtor was not currently receiving income.[5]

- Debtor failed to disclose substantial gifts made within one year of the petition date on the original Statement of Financial Affairs. On the Amended Statement of Financial Affairs, Debtor disclosed a $15,000.00 gift to Tanner Moore given on June 16, 2010, a $3,000.00 gift to Tanner Moore given on July 20, 2010, and a $2,500.00 gift to Tanner Moore given on July 22, 2010. This is a material false oath because it concerns the disposition of Debtor's assets. Debtor used the proceeds from the sale of his residence to make these transfers.

- Debtor failed to disclose numerous transfers that occurred within two years of the petition date on the original Statement of Financial Affairs. The original Statement of Financial Affairs indicated that no such transfers had been made. However, Debtor testified that he sold his residence on June 16, 2010, just 6 months prior to the filing of this bankruptcy petition. The omission of the sale of his residence from the Statement of Financial Affairs constitutes a material false oath because it concerns the sale of a major asset shortly before the filing of this bankruptcy petition. If Debtor had not sold the house, it would have been property of the estate. If Debtor had not disposed of all of the proceeds of the sale of the

---

[5]Debtor testified that he used his LLC account to pay for personal expenditures. However, Debtor's accountant treated the payment of these personal expenditures as draws that were reflected on Debtor's personal income tax returns. These draws were accounted for in Debtor's estimation of his 2010 income.

house, such proceeds would have been property of the estate. The Amended Statement of Financial Affairs shows the following transfers were made within two years of the filing of this bankruptcy petition: a $5,000.00 transfer to Jamie Tisch on July 15, 2010; and numerous transfers made to The Law Office of John T. Sutton, LLC, totaling $54,740.00. The omission of these transfers constitutes a material false oath because such transfers represent the disposition of Debtor's assets. Debtor used the proceeds from the sale of his residence to make these transfers.

- Debtor failed to disclose the closure of several bank accounts on the original Statement of Financial Affairs. The failure to disclose the closure of the zero-balance money market account with Robertson Bank on November 1, 2010 was a material false oath because a large portion of the proceeds from the sale of Debtor's residence were deposited into the money-market account.

- Debtor failed to disclose all addresses that he occupied within the three years preceding the bankruptcy petition. The failure to disclose Debtor's former address is a material false oath because Debtor owned the real property located at his former address before he moved.

- Debtor failed to disclose his bookkeeper and accountant on the original Statement of Financial Affairs. This is a material false oath. Debtor's accountant and bookkeeper would have access to Debtor's business records which relate to the business transactions and business dealings of Debtor.

<u>Did Debtor know the material false oaths were false?</u>

To satisfy the requirement that the material false oaths be made knowingly, the omission must be deliberate. <u>See</u> <u>Keefe v. Rudolph (In re Rudolph)</u>, 233 Fed. App'x 885, 889 (11th Cir. 2007). "Discharge may not be denied where the untruth was the result of mistake or inadvertence." <u>Id.</u> In other words, if a debtor understands what information is being sought, has knowledge of the information being sought, and fails to disclose the information being sought, the debtor knowingly failed to disclose the information being sought.

Debtor is well-educated and knowledgeable. He is an attorney who occasionally handled bankruptcy work before he filed this bankruptcy petition. He is familiar with legal language and the language used in bankruptcy. Therefore, this court finds that he understood what information was

15

being sought in the schedules and Statement of Financial Affairs.  The only question now is whether

Debtor had knowledge of the information when he failed to disclose it in his original schedules and

SOFA.  This court will now examine whether the material false oaths identified

above were made knowingly.

- Debtor failed to disclose a savings account with Alabama One Credit Union worth $1,464.29 and a savings account with Tuscaloosa Credit Union worth $46.73.  Debtor knowingly omitted these savings accounts when he filed his original schedules.  Debtor knew that he had two savings accounts as evidenced by his testimony at the § 341 meeting of creditors.

- Debtor failed to disclose his potential interest in a boat on Schedule B.  On Amended Schedule B, Debtor lists a potential interest in a boat purchased with another individual.  In addition, Debtor indicated on Amended Schedule B that he is currently unaware of the boat's value and whereabouts.  Debtor did not knowingly omit his potential interest in the boat when he filed his original schedules.  Although it would have been best for Debtor to disclose his potential interest, the testimony of Debtor indicates that he was not aware whether the boat still existed.  The boat was purchased with another individual in 1996, and Debtor had not used the boat in numerous years.  Because this court believes that Debtor did not know whether he owned the boat, it finds that Debtor did not knowingly omit the asset from his original Schedule B.

- Debtor failed to disclose the lease of his office space on original Schedule G.  Debtor knowingly omitted the unexpired lease with Baird Properties.  Debtor knew he had an unexpired lease on his office space.  This is not something that he would forget.

- Debtor failed to disclose substantial gifts made within one year of the petition on the original Statement of Financial Affairs.  Debtor knowingly omitted the roughly $20,000.00 that he gave to Tanner Moore just months before the filing of this bankruptcy petition.  This is not something that he would forget.

- Debtor failed to disclose numerous transfers that occurred within two years of the petition date on the original Statement of Financial Affairs.  The original Statement of Financial Affairs indicated that no such transfers had been made.  However, Debtor testified that he sold his residence on June 16, 2010, just 6 months prior to the filing of this bankruptcy petition.  Debtor knowingly omitted the sale of his residence.  Debtor knew that he sold his residence just months prior to filing bankruptcy.  This is not something that he would forget. The Amended Statement of Financial Affairs shows other transfers that were made within two years of the filing of this bankruptcy petition: a $5,000.00 transfer to Jamie Tisch on July 15, 2010; and numerous transfers made to The Law Office of John T. Sutton, LLC totaling

16

$54,740.00.  Debtor knowingly omitted the numerous transfers made to The Law Office of John T. Sutton, LLC.  Debtor knew that he used a large portion of the proceeds from the sale of his residence to catch up on bills from his LLC just months prior to filing bankruptcy. This is not something he would forget.  Debtor knowingly omitted the $5,000.00 transfer to Jamie Tisch.  Debtor knew that he used a portion of the sale proceeds from his house to refund an unused retainer to a client.  This is not something that he would forget.

●      Debtor failed to disclose the closure of several bank accounts on the original Statement of Financial Affairs.  Debtor knowingly omitted the closure of the zero-balance money market account with Robertson Bank.  Debtor knew that, a mere month before the filing of the bankruptcy petition, he closed the account that he transferred a substantial amount of money from the proceeds of his residence.  Debtor also transferred a substantial amount of money from this account to the account held in the name of Debtor's LLC.  This is not something that Debtor would forget.

●      Debtor failed to disclose all addresses that he occupied within the three years preceding the bankruptcy petition.  Specifically, Debtor failed to disclose that he lived at the prior residence which he sold a mere 6 months prior to the filing of this bankruptcy petition.  Debtor testified that he lived at his residence for 10 years before he sold it in June of 2010.  Debtor knowingly omitted his prior address from the original Statement of Financial Affairs.  Debtor would not forget the house he had lived in for 10 years.

●      Debtor failed to disclose his bookkeeper and accountant on the original Statement of Financial Affairs.  Debtor knowingly omitted the names of his bookkeeper and accountant on the original Statement of Financial Affairs.  He knew that he had a bookkeeper and accountant that prepared his taxes as evidenced by his § 341 testimony.

### Did Debtor make the material false oaths with fraudulent intent?

To satisfy the requirement that the material false oaths be made fraudulently, the omission must be made with the "actual intent to hinder, delay or defraud."  Huntington Ctr. Partners, Ltd. v. Dupree (In re Dupree), 197 B.R. 928, 937 (Bankr. N.D. Ala. 1996).  "[A]ctual intent may be proven by circumstantial evidence."  Id.  "For purposes of denial of discharge, reckless disregard for truth is generally recognized as the equivalent of fraud."  Id.  See also COLLIER ON BANKRUPTCY ¶ 727.04[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (quoting Jordan v. Bren (In re Bren), 303 B.R. 610 (B.A.P. 8th Cir. 2004) ("'A reckless disregard of both the serious nature of the

information sought and the necessary attention to detail and accuracy in answering may rise to the

level of fraudulent intent necessary to bar a discharge.'"). This court will examine whether the

following material false oaths were made fraudulently.

- Debtor failed to disclose a savings account with Alabama One Credit Union worth $1,464.29 and a savings account with Tuscaloosa Credit Union worth $46.73. There is no evidence that Debtor omitted this information fraudulently.

- Debtor failed to disclose his potential interest in a boat on Schedule B. There is no evidence that Debtor omitted this information fraudulently.

- Debtor failed to disclose the lease of his office space on original Schedule G. There is no evidence that Debtor omitted this information fraudulently.

- Debtor failed to disclose substantial gifts made within one year of the petition on the original Statement of Financial Affairs. There is substantial evidence that Debtor omitted this information fraudulently. As discussed in detail below, this court finds that all of the omissions relating to the sale of Debtor's residence were omitted fraudulently.

- Debtor failed to disclose numerous transfers that occurred within two years of the petition date on original Statement of Financial Affairs. The original Statement of Financial Affairs indicated that no such transfers had been made. However, Debtor testified that he sold his residence on June 16, 2010, just 6 months prior to the filing of this bankruptcy petition. There is substantial evidence that Debtor omitted this information fraudulently. The Amended Statement of Financial Affairs shows other transfers that were made within two years of the filing of this bankruptcy petition: a $5,000.00 transfer to Jamie Tisch on July 15, 2010; and numerous transfers made to The Law Office of John T. Sutton, LLC totaling $54,740.00. There is substantial evidence that Debtor omitted this information fraudulently. As discussed in detail below, this court finds that all of the omissions relating to the sale of Debtor's residence were omitted fraudulently.

- Debtor failed to disclose the closure of several bank accounts on the original Statement of Financial Affairs. Specifically, Debtor failed to disclose the closure of a zero-balance money market account with Robertson Bank on November 1, 2010. There is substantial evidence that Debtor omitted this information fraudulently. As discussed in detail below, this court finds that all of the omissions relating to the sale of Debtor's residence were omitted fraudulently.

- Debtor failed to disclose all addresses that he occupied within the three years preceding the bankruptcy petition. Specifically, Debtor failed to disclose the address of the residence he lived in for 10 years; the residence that he sold a mere 6 months before the filing of this

Case 11-70007-CMS    Doc 48    Filed 05/09/13    Entered 05/09/13 12:46:44    Desc Main
Document    Page 18 of 26

bankruptcy petition. There is substantial evidence that Debtor omitted this information fraudulently. As discussed in detail below, this court finds that all of the omissions relating to the sale of Debtor's residence were omitted fraudulently.

● Debtor failed to disclose his bookkeeper and accountant on the original Statement of Financial Affairs. There is no evidence that Debtor omitted this information fraudulently.

While this court is concerned with the sheer number of omissions contained in Debtor's original schedules and original Statement of Financial Affairs, it is the omission of the sale of Debtor's residence, the omission of the name of the bank into which the proceeds from the sale of Debtor's residence were deposited, the omission of the closure of the money market account into which Debtor transferred a substantial amount of the proceeds from the sale of his residence, the omission of the numerous transfers to Tanner Moore and Debtor's LLC that were made with the proceeds from the sale of Debtor's residence, and the omission of the fact that Debtor lived in the residence he sold in the three years prior to the filing of this bankruptcy petition that give this court the most concern. In short, Debtor omitted any and all information that might have led to the discovery of the sale of his residence, a sale that occurred a mere 6 months prior to the filing of this bankruptcy petition. If Debtor had disclosed the sale of his residence in June of 2010, the trustee would have been aware of such sale. If Debtor had disclosed the name of bank into which the proceeds from the sale of Debtor's residence were deposited, Trustee might have sought bank records, seen the large deposit of funds, and questioned Debtor about the source of such funds. This would probably have led to the discovery of the sale of Debtor's residence. If Debtor had disclosed the closure of the money-market account into which Debtor transferred a substantial amount of the proceeds from the sale of his residence, Trustee might have sought bank records, seen the large deposit of funds, and questioned Debtor about the source of such funds. This would probably have

19

led to the discovery of the sale of Debtor's residence. If Debtor had disclosed the numerous transfers to Tanner Moore and Debtor's LLC in the months leading up to the filing of this bankruptcy petition, Trustee probably would have questioned the source of the funds to make these transfers-it is not often that a debtor has the means to transfer over $70,000.00 in the months leading up to the filing of a bankruptcy petition. This line of questioning probably would have led to the discovery of the sale of Debtor's residence. If Debtor had disclosed the address of the residence he lived in until June of 2010, Trustee might have asked Debtor if he had an ownership interest in the property located at this address. This would probably have led to the discovery of the sale of Debtor's residence. In the alternative, Trustee could have checked the property records to see if Debtor had an ownership interest in the property located at this address. This would surely have led to the discovery of the sale of Debtor's residence. However, Debtor did not disclose any of these things. Looking at the schedules and Statement of Financial Affairs as originally filed, there is nothing disclosed therein that could lead to the discovery of the sale of Debtor's residence a mere 6 months prior to the filing of this bankruptcy petition. At a minimum, Debtor failed to disclose these numerous items with a reckless disregard for the truth. Therefore, this court finds that Debtor made these numerous false oaths fraudulently. See, .eg., Swicegood v. Ginn, 924 F. 2d 230, 232 (11th Cir. 1991) (affirming the finding by the bankruptcy court that debtor's omission of assets from his bankruptcy schedule was deliberate when: (1) debtor amended his schedules to include the omitted assets only when he became aware that his former wife had revealed the assets; (2) his amendment significantly undervalued those items; and (3) debtor wore the Rolex watch (an omitted asset) on his wrist); In re Protos, 322 Fed. App'x 930, 933 (11th Cir. 2009) ("While a single, isolated instance of non-disclosure or improper disclosure *may* not support a finding of fraudulent intent, we find that the

20

repeated nature of non-disclosures and improper disclosures made by the [debtor] in his schedules and SOFA supports the bankruptcy court's finding of fraudulent intent."); In re Dupree, 197 B.R. at 938 ("Where a debtor makes numerous omissions from her bankruptcy schedules and Statement of Financial Affairs, said conduct may constitute a pattern of reckless disregard for the truth, warranting the denial of discharge."); Heidkamp v. Whitehead (In re Whitehead), 278 B.R. 589, 594 (Bankr. M.D. Fla. 2002) (stating that "[w]hile isolated instances of omissions could be attributable to oversight or even negligence . . . a pattern of omissions . . . clearly warrants [the conclusion] that the omissions and the failure to furnish appropriate answers to the questions on the Statement of Financial Affairs was done intentionally and with the requisite fraudulent intent..."); and United States Trustee v. Halishak (In re Halishak), 337 B.R. 620, 627 (Bankr. N.D. Ohio 2005) ("In using circumstantial evidence, there will often exist numerous evidentiary indicators, each of which alone would not establish fraud, but when viewed collectively form a trail leading firmly in the direction of fraudulent intent. As such, an always important consideration in any analysis under § 727(a)(4)(A) is whether there exists a series or pattern of errors and omissions.").

In summation, 6 months before the filing of this bankruptcy petition Debtor sold his only major asset, his house, and received roughly $89,000.00 in proceeds after the first and second mortgages were satisfied. By the time Debtor filed his bankruptcy petition, the $89,000.00 in proceeds were gone. While that alone might not be cause for suspicion, Debtor failed to disclose in his petition and original schedules any information that might lead a trustee or party in interest to discover the sale of Debtor's house, the proceeds from the sale of Debtor's house, or the dissipation of the proceeds from the sale of Debtor's house. These facts, when taken together, paint a picture that this court cannot ignore: Debtor acted fraudulently.

21

Now that this court has found sufficient evidence to conclude that Debtor omitted all reference to the sale of his residence fraudulently, Debtor is afforded the opportunity to bring forth evidence that the he did not omit all reference to the sale of his residence fraudulently. In re Phillips, 476 Fed. App'x 813, 816 (11th Cir. 2012). Debtor points to two things to prove that he did not omit all reference to the sale of his residence fraudulently. First, Debtor asserts in his post-trial brief that he informed his attorney about the sale of the residence, but that his attorney did not include the sale in his bankruptcy petition. Second, Debtor asserts that his candid testimony at the § 341 meeting of creditors and his amended schedules prove that he did not omit all reference to the sale of his residence fraudulently. The court will address each assertion in turn.

First, there is no evidence that Debtor informed his attorney of the sale of his residence prior to the filing of this bankruptcy petition. Debtor did not testify to this fact during the course of his testimony. The paralegal who conducted the initial bankruptcy interview did not testify to this fact during the course of her testimony. Debtor's bankruptcy counsel did not testify to this fact during the course of his testimony.[6] Debtor's assertion that he told his attorney about the sale of his residence prior to the filing of his bankruptcy petition was not proven at trial. Therefore, it cannot be the basis for concluding that Debtor did not omit all reference to the sale of his residence fraudulently.[7]

_____

[6]The testimony of Debtor's bankruptcy attorney was confusing. When speaking of the conversation between him and Debtor before the § 341 meeting of creditors and after the attorney was informed that Trustee was aware of the sale of Debtor's residence, the attorney testified that he could not say whether Debtor told him about the sale before that moment. This testimony is not sufficiently clear for this court to make a finding that Debtor informed his attorney of the sale prior to the filing of the petition.

[7]Even if Debtor's assertion that he had told his attorney about the sale of his residence prior to the filing of the bankruptcy petition is true, it is not clear whether this fact would have

Second, it is true that Debtor's § 341 testimony is quite candid and forthright and discloses matters omitted from the original schedules and corrects errors made in the original schedules. It is also true that Debtor then filed amended schedules and an Amended SOFA, which substantially corrected all the errors and omissions in the original schedules.[8] Unfortunately, this court does not agree that the candid testimony and amended schedules prove that Debtor did not omit all references to the sale of his residence fraudulently. While it is true that "a debtor coming forward of his or her own accord to correct an omission is strong evidence that there was no fraudulent intent in the omission," that is not what occurred in this case. 6 COLLIER ON BANKRUPTCY ¶ 727.04[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Recall that Trustee informed Debtor's bankruptcy counsel prior to the commencement of the § 341 meeting of creditors that Trustee was aware of the sale of Debtor's residence. Debtor's bankruptcy counsel then informed Debtor of this new development prior to the commencement of the § 341 meeting of creditors. Debtor did not come forward of his own accord to correct the omissions; he corrected the omissions only after being informed that Trustee was already aware of the omissions. Under these circumstances, no good faith

_____

aided Debtor in his quest to prove that he did not omit all reference to the sale of his residence fraudulently. Compare 6 COLLIER ON BANKRUPTCY ¶ 727.04[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (stating that if items are omitted from the schedules "by mistake or upon honest advice of counsel, to whom the debtor had disclosed all the relevant facts, the declaration will not be deemed willfully false, and the discharge should not be denied because of it.") with In re Tully, 818 F. 2d at 111 ("[I]t is well settled that reliance upon advice of counsel is . . . no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules."). Although this court will not address the issue as it has no bearing on the outcome of this case, it should be noted that Debtor had an opportunity to review his schedules and SOFA and correct any mistakes before they were filed.

[8]It should be noted that the sale of Debtor's residence is not disclosed in the Amended SOFA.

or honest motive can be imputed to Debtor based upon his later candid testimony and amended schedules. See, e.g., In re Chalik, 748 F. 2d at 619 (holding that evidence that debtor only disclosed his involvement in several corporations when trustee asked him specific questions was sufficient for bankruptcy court to reasonably infer that debtor omitted information necessary to determine his financial condition and that debtor was due to be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A)); In re Halishak, 337 B.R. at 630 ("However, where a debtor only voluntarily discloses information after its existence is uncovered by a third-party (e.g., a trustee or creditor), good faith is unlikely to be found."); Ansvar Am. Ins. Co. v. Klein (In re Klein), 114 B.R. 778, 779-80 (Bankr. M.D. Fla. 1990) ("[I]n cases where amendments have been seen as relieving the debtor of the consequences of a false oath, the amendments were voluntary, coming before disclosure to the debtor that the creditors or trustee had discovered the falsity."). Debtor has failed to rebut the evidence put forth by Plaintiff. Debtor has failed to prove that the omissions relating to the sale of his residence were not made fraudulently.

Plaintiff has proven by a preponderance of the evidence that: (1) Debtor made a false statement under oath; (2) the false statement related materially to the bankruptcy case; (3) Debtor knew the false statement was false; and (4) Debtor made the false statement with fraudulent intent. In so doing, Plaintiff has proven that Debtor should be denied a discharge pursuant to § 727(a)(4)(A).

This court never lightly denies a debtor a discharge pursuant to 11 U.S.C. § 727 as the consequences of such denial are harsh.[9] However, in this case, such denial is warranted. "In order

---

[9] "[T]he effect of having a discharge denied is harsh: it renders all the debts/claims which could have been included in the petition forever nondischargeable in bankruptcy, thereby subjecting the debtor's assets and future income to all claims of such creditors. 11 U.S.C. § 523(a)(10)." In re Halishak, 337 B.R. 620 at 625.

to obtain the extraordinary relief afforded in bankruptcy, debtors have certain duties to fulfill, the most essential duty being 'the complete and honest disclosure of assets and recent transfers made by the debtor.'" Leo v. Armstrong (In re Armstrong), No. 07-40078, 2009 WL 2413600, at *2 (Bankr. N.D. Ala. Aug. 5, 2009) (quoting Syngenta Seeds, Inc. v. Eigsti (In re Eigsti), 323 B.R. 778, 782-83 (Bankr. M.D. Fla. 2005)). "Complete and honest disclosure is necessary for the trustee to administer the estate; so important is this duty that a debtor may be denied a discharge under Section 727 for failure to disclose assets or transfers in the Schedules and Statement of Financial Affairs." Id. "The effectiveness of the bankruptcy system depends on the Debtor's complete candor, and it is not the job of the trustee or creditor to search for information about the Debtor that should be readily disclosed in his bankruptcy Schedules and Statements." Lincoln Savings Bank v. Freese (In re Freese), 460 B.R. 733, 739 (B.A.P. 8th Cir. 2011). See also Chambers v. Coon (In re Coon), 396 B.R. 772, 779 (Bankr. M.D. Fla. 2008) (quoting Friedman v. Sofro (In re Sofro), 110 B.R. 989, 991 (Bankr. S.D. Fla. 1990)) ("'A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the questions are answered completely in all respects.'"). Debtor failed to uphold his obligation for complete candor. As a result, Trustee was forced to find out from another source about the sale of a major asset a mere 6 months prior to the filing of Debtor's bankruptcy petition. Trustees should not have to rely upon third parties to keep them informed; it is the debtor's responsibility to fully and completely disclose all information sought in the bankruptcy petition, the schedules, and the SOFA. In this case, Debtor did not do so. Instead, he made numerous material false oaths knowingly and fraudulently. The consequence of that failure is a denial of his discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

**CONCLUSION**

By showing that Debtor omitted all reference to the sale of his residence, which occurred a mere 6 months prior to the filing his bankruptcy petition, and by showing that Debtor omitted all information that might lead to the discovery of the sale of his residence, Plaintiff has proven by a preponderance of the evidence that Debtor, in his bankruptcy case, made material false oaths knowingly and fraudulently.  Debtor failed to rebut this evidence.  As such, this court **SUSTAINS** Plaintiff's objection to discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and **DENIES** Debtor his discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

**DONE and ORDERED** this May 9, 2013.

/s/ C. Michael Stilson<br>
C. Michael Stilson<br>
United States Bankruptcy Judge

26